UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| CHRISTIAN DURMOV, | CIVIL ACTION NO. 5:12-258-KKC |
| Plaintiff, | |
| V. | **OPINION & ORDER** |
| DAVID DUNCAN, and ANTHONY BOTTOMS, | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on two motions for summary judgment, one filed by each remaining defendant. (DE 30 & 31). Both defendants contend that Plaintiff Christian Durmov cannot succeed as a matter of law on his claims for violations of the Fourth Amendment under § 1983 and state-law torts of assault and battery. For the following reasons, the Court will grant the defendants' motions.

I.

Christian Durmov was arrested on July 30, 2011 for alcohol intoxication after a brief but non-violent altercation with two police officers. The evening started when Durmov and a friend, Alen Fatovavich, went drinking at the club Saddle Ridge in Lexington, Kentucky. At around 2:15 a.m., they left the club to head home. Although Durmov had driven to Saddle Ridge that night, he determined he was too intoxicated to make it home and asked Fatovavich to drive. Fatovavich took Durmov's keys to his Ford Explorer, and the two of them headed out of the parking lot. But when Fatovavich started to drive off, the tires squealed loudly in the presence of several police officers. This prompted Defendant Anthony

Bottoms, a Lexington police officer, to pull them over. Bottoms asked Fatovavich to step out of the car so he could administer a field sobriety test.

David Duncan, a police officer with the University of Kentucky, observed Bottoms make the traffic stop and came over to assist. He approached the passenger side of the Explorer, where Durmov was sitting. Upon his approach he saw several open alcoholic containers in the car. Duncan asked Durmov to step out of the car so he could retrieve the containers, but Durmov refused to comply. According to Durmov's own testimony, Officer Duncan "politely" and "professionally" asked Durmov to step out of the car at least three times, and Durmov refused each request. (Durmov Depo., DE 30-3, 77:8–21). Durmov mistakenly believed that as the passenger of the vehicle, Duncan had no legal authority to order him to step outside. When Durmov refused to leave the car three times, Duncan opened to the door to remove him.

The parties disagree as to what happened next. Durmov alleges that Duncan grabbed him by the arm, pulled him out of the vehicle, and threw him on the ground. (Durmov Depo., DE 30-3, 77:25–78:1). Duncan, on the other hand, contends that Durmov eventually complied with his request to step out of the car, but when Duncan attempted to assist him by holding his right arm, Durmov "yanked" it away, which caused him to fall to the ground. (Trial Transcript, DE 30-4, at 68:12–25). There are significant reasons to doubt Durmov's testimony in this matter: he admits he was intoxicated; yanking his arm away would be consistent with his other aggressive and uncooperative behavior; and he repeatedly stated in his deposition that he could not remember many of the events that happened on the night in question. But because this is a motion for summary judgment, the Court must draw all reasonable factual inferences in favor of the nonmoving party, and will therefore adopt Durmov's version of events, despite any credibility issues it may have. *See Scott v.*

*Harris*, 550 U.S. 372, 378 (2007) ("[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the [summary judgment] motion.") (internal quotations omitted).

The parties agree that when Durmov fell to the ground, Duncan fell with him. Bottoms left Fatovavich and came to assist. According to Durmov, Bottoms placed a knee on his back to restrain him. Bottoms then asked Durmov whether he was going to calm down, and when Durmov responded in the affirmative, Bottoms ordered him to have a seat on the nearby curb. Although Durmov contends in his pleadings that he was handcuffed at this point, during his deposition he testified that he was not placed in handcuffs until later. (Durmov Depo., DE 30-3, 84:21–25 & 107:19–108:14)

Durmov admits that during the traffic stop he was loud and argumentative with the officers. (Durmov Depo., DE 30-3, 86:19–87:19). He was clearly intoxicated, believed that Duncan did not have the right to order him out of the vehicle, and was not shy about expressing his frustration. When the field sobriety test was completed, Bottoms released Fatovavich but placed Durmov under arrest for alcohol intoxication in violation of K.R.S. § 222.202(1). Durmov was handcuffed and moved into the rear seat of Bottoms' police cruiser. He called his father to inform him of the circumstances, but Duncan took away his phone at the request of Bottoms. No one disputes that it was Bottoms who made the initial traffic stop; Bottoms who placed Durmov under arrest; and Bottoms who transported him to the Fayette County Detention Center.

Following his arrest, Durmov was acquitted by a jury in Fayette District Court. He subsequently brought the instant action against Duncan, Bottoms, the University of Kentucky, and the Lexington-Fayette Urban County Government. The University and the municipal government have been dismissed, and the remaining claims are those brought

against Duncan and Bottoms individually. Durmov asserts claims under § 1983 for violations of his Fourth Amendment rights, along with state-law claims of assault and battery. Duncan and Bottoms have moved for summary judgment on all remaining claims.

## II.

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). The moving party may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the nonmovant's claim. *Id.* at 322–25. Once the movant meets this burden, the opposing party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted). The duty of this Court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In making such a determination, however, courts must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott*, 550 U.S. at 378 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

**III.**

In bringing his claim under § 1983, Durmov alleges four separate violations of his Fourth Amendment rights. He asserts that (1) Duncan used excessive force in removing him from the car; (2) Bottoms used excessive force when using his knee to restrain Durmov on the ground; (3) his handcuffs were excessively tight; and (4) that he was arrested without probable cause. None of these claims are supported by the record, and the Court will grant summary judgment in favor of both Duncan and Bottoms as to all claims arising under § 1983.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether qualified immunity is appropriate, courts engage in a two-step analysis. First, "courts must address the threshold question of whether . . . the alleged facts show the officer's conduct violated a constitutional right." *Fox v. DeSoto*, 489 F.3d 227, 235 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a constitutional violation exists, "the next step is to determine whether the right was clearly established in a particularized sense, such that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* Importantly, on a motion for summary judgment the court must engage in this analysis while being careful to draw all factual inferences in favor of the nonmoving party. *See Tolan v. Cotton*, No. 13-551, at *7 (U.S. May 5, 2014) (per curiam) ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant.").

The Court finds that all of the alleged constitutional violations are without merit even when drawing all reasonable inferences in Durmov's favor. Pursuant to the first prong of the qualified-immunity analysis, Durmov has failed to produce evidence sufficient to create a genuine dispute as to whether Officers Duncan and Bottoms violated his constitutional rights. Accordingly, the claims brought pursuant to § 1983 will be dismissed.

**A. Claims of Excessive Force**

Durmov's first three allegations assert that Duncan and Bottoms violated his Fourth Amendment rights through their use of excessive force. He contends that that (1) Duncan used excessive force when removing him from the vehicle; (2) Bottoms used excessive force when placing his knee against Durmov's back; and (3) Bottoms used excessive force by handcuffing Durmov's wrists too tightly. None of these are substantiated by the facts on the record, and no reasonable person could find that Duncan and Bottoms used excessive force on the night in question.

Officers making investigative stops have "the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Because of this, "[c]laims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 251 (6th Cir. 2010). Among the factors that courts consider when determining whether the use of force was objectively reasonable are the severity of the crime, the potential threat of safety, and whether the individual was attempting to flee or resisting arrest. *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396). Ultimately, "[t]he question [courts] must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable." *Id.* at 236–37.

Duncan's use of force in removing Durmov from the vehicle—causing him to be thrown to the ground—was objectively reasonable. Durmov repeatedly refused to comply with Duncan's lawful orders despite Duncan's polite and professional demeanor. According to Durmov's own testimony, he refused to hand Duncan the open alcoholic containers and then refused—at least three times—to exit the vehicle. He was loud, argumentative, and belligerent, and refused to cooperative with Duncan's reasonable orders based on his mistaken belief that he need not comply.

There is no question that Duncan was within his authority in ordering Durmov out of the vehicle. The Supreme Court has unequivocally held that officers conducting a traffic stop may order passengers out of the vehicle as a matter of caution. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997). The Court explained that, "[r]egrettably, traffic stops may be dangerous encounters. . . . [D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car." *Id.* at 413–14. For this reason, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Id.* at 415.

Curiously, Durmov does not dispute that Duncan had clear legal authority to order him out of the car. Instead, he contends that although Duncan could order Durmov from the car, he could not necessarily use force to remove him after Durmov repeatedly refused to comply. (Plaintiff's Response, DE 32, at 7 ("Not one of the cases cited [by the defendant] allows a police officer to physically remove the passenger from the vehicle.")). This argument is absurd: if Duncan has the authority to order Durmov out of the car, and Durmov repeatedly refuses to comply with this otherwise lawful order, the law is clear that Duncan may use reasonable force to effectuate his orders. *See Graham*, 490 U.S. at 396 (noting that the Supreme Court's "Fourth Amendment jurisprudence has long recognized

7

that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"). The ability to order Durmov out of the car would be meaningless without a corresponding right to effectuate that order with the use of force.

Moreover, nothing in Durmov's testimony would lead a rational person to conclude that Duncan's use of force was excessive. Even if Duncan pulled Durmov out of the vehicle and threw him to the ground, his conduct was in response to a loud, aggressive, and belligerent individual who refused to cooperate with the "polite" and "professional" orders of a police officer.[1] Durmov suffered no injuries from the use of force, and in fact, Duncan himself fell to the ground with Durmov. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotations omitted). Duncan used force to remove an uncooperative, belligerent, aggressive, and intoxicated individual from his vehicle, and he did so without causing even the slightest of injuries to the plaintiff. His conduct—even taking Durmov's disputed version of events as true—was objectively reasonable.

Similarly, Bottoms' use of his knee to restrain Durmov on the ground did not violate the Fourth Amendment. Durmov testified that both he and Duncan had fallen onto the ground when Bottoms came over and placed his knee against his back. According to Durmov, Bottoms asked whether he was going to calm down, and when Durmov said yes, Bottoms permitted him to stand up and have a seat on the nearby curb. Durmov suffered no injury from this encounter.

---

[1] When Durmov was asked during his deposition whether Duncan asked him to step out of the car "in a polite, appropriate way," Durmov responded with the following: "At -- in a professional way, yes." (Durmov Depo., DE 32, 77:16–21).

Viewing these facts from the perspective of a reasonable officer, Durmov posed a significant safety threat: he was intoxicated and acting aggressively, and now found himself entangled with a police officer on the ground. Bottoms responded to the situation by restraining Durmov, without causing injury, and then allowed him to stand up as soon as Durmov appeared to calm down. Rather than being excessive, Bottoms used exactly the force necessary to restrain Durmov without injury, and ended his use of force as soon as the situation was stabilized. The Court finds no merit in Durmov's claim that this use of force was excessive, and instead finds it objectively reasonable as a matter of law.

Finally, Durmov contends that his rights were violated when Bottoms handcuffed him too tightly, which cause discomfort, redness, and slight bruising. "The Fourth Amendment prohibits unduly tight or excessively forceful handcuffing during the course of a seizure." *Miller*, 606 F.3d at 252 (citing *Morrison v. Bd. of Tr. of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)). But in order to sustain a claim for such a violation, "a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he or she complained that the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced 'some physical injury' resulting from the handcuffing." *Id*. Durmov has not presented any evidence demonstrating the first two prongs have been met. Nothing in the record indicates that he complained about the handcuffing and that Officer Bottoms ignored such complaints. Bottoms argues this very point in his motion for summary judgment, and Durmov fails to point to any contradictory evidence in the record sufficient to create a genuine dispute over this fact. Instead, Durmov focuses only on whether he suffered "some physical injury," ignoring the threshold requirement of establishing that he complained about the handcuffs at the time of the incident and the officer subsequently ignored such complaints. Durmov has failed to produce evidence creating a genuine dispute

over these two issues, and his claim under § 1983 for excessively tight handcuffs must be denied.

**B. Wrongful Arrest**

Durmov also alleges that he suffered humiliation from his arrest, which the court construes as a claim for a wrongful arrest under § 1983. Under § 1983, an officer may be found liable for arresting an individual without probable cause, as such arrest would constitute an unreasonable seizure under the Fourth Amendment. But if probable cause is present, the arrest is constitutional and liability will not attach. *Virginia v. Moore*, 553 U.S. 164, 171 (2008) ("[W]hen an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable."). Probable cause exists where "the facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (internal quotations omitted). In this case, Bottoms arrested Durmov for alcohol intoxication in violation of K.R.S. § 222.202(1), which states the following:

> A person is guilty of alcohol intoxication when he appears in a public place manifestly under the influence of alcohol to the degree that he may endanger himself or other persons or property, or unreasonably annoy persons in his vicinity.

The Kentucky Court of Appeals has recently held that when a person under the influence of alcohol interferes with a lawful traffic stop, that person may be guilty of alcohol intoxication despite being in a private car. *See Grimes v. Commonwealth*, 2013 WL

2450504, *2 (Ky. Ct. Ap. June 7, 2013).[2] Durmov admits that he was intoxicated, admits that he was loud, argumentative, and non-cooperative. There is no question that Bottoms had probable cause to believe he was in violation of K.R.S. § 222.202(1).

## IV.

Durmov's claims for assault and battery must also be dismissed. Under Kentucky law, police officers are permitted to use reasonable force to make arrests or preserve safety. *See* K.R.S. § 503.90; *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922–23. Because of this, officers are privileged to take actions that would otherwise constitute tortious behavior, so long as their use of force is objectively reasonable. *Woosley*, 591 F. Supp. 2d at 923 (citing *Lawson v. Burnett*, 471 S.W.2d 726, 728–29 (Ky. 1971)). In analyzing the claims brought under § 1983, the Court has already concluded that the actions taken by Duncan and Bottoms on the night in question were objectively reasonable in light of Durmov's non-compliance and belligerence. Accordingly, his state-law claims for assault and battery must similarly be dismissed under Kentucky law. *See Atwell v. Hart Cnty., Ky.*, 122 Fed. App'x 215, 219 (6th Cir. 2005) ("Having concluded that the actions of the [defendant] that are the basis of [the] assault and battery claim were objectively reasonable in the § 1983 context, we further conclude that [the plaintiff] could not prove his claim under Kentucky law.").

## V.

Christian Durmov admits he was loud, aggressive, and most importantly, uncooperative with the officers whom he described as both polite and professional during the traffic stop. In the face of this, Officers Duncan and Bottoms acted in a manner that is objectively

---

[2] The opinion in *Grimes* is not yet final and therefore not binding on other Kentucky courts. Nonetheless, this Court finds the *Grimes* reasoning—which is based on an interpretation of the statutory definition of "public place" found at K.R.S. § 525.010(3)—persuasive. It is certainly persuasive in determining whether Bottoms had probable cause, rather than proof beyond a reasonable doubt, to believe that Durmov was guilty of alcohol intoxication.

reasonable as a matter of law. Even taking as true all of the facts provided on the record by Durmov, the Court finds nothing in the conduct of either defendant that was unreasonable, excessive, or otherwise impermissible. Accordingly, **IT IS ORDERED** that

1. David Duncan's motion for summary judgment (DE 30) on the remaining § 1983 and state-law tort claims is **GRANTED** and the claims are **DISMISSED**;

2. Anthony Bottoms' motion for summary judgment (DE 31) on the remaining § 1983 and state-law tort claims is **GRANTED** and the claims are **DISMISSED**; and

3. Judgment shall be entered contemporaneously with this order.

Dated this 4th day of June, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY